```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                          :
                                          :     CASE NO. 1:07-cv-661
COLUMBIA GAS,                             :
TRANSMISSION CORP                         :
                                          :
           Plaintiff,                     :
                                          :
vs.                                       :     ORDER AND OPINION
                                          :     [Resolving Doc. 57]
FIRST CONGREGATIONAL CHURCH               :
                                          :
           Defendant.                     :
                                          :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the Court considers whether Columbia Gas's gas pipeline easements entitle it to clear a 50-foot right-of-way on Defendant's property, a church retreat. Plaintiff Columbia Gas files a motion for summary judgment that its pipelines L-2150, SL-W8816, and SL-W8928 are entitled to a 50-foot right-of-way, that it is entitled to clear the trees encroaching on that fifty foot right-of-way, and that Defendant First Congregational Church is not entitled to damages for Columbia Gas's previous clearing of trees along L-2150. [Doc. 57]. Defendant First Congregational Church opposes the motion. [Doc. 62].

**I. Background**

The Plaintiff owns three gas pipelines that traverse the Defendant's property, SL-W8814, L-2150, and SL-W8928. Pipeline SL-W8814 is a three-inch gas storage pipeline that runs approximately 1,826 feet in length. The maximum allowable operating pressure for SL-W8814 is 1,200 pounds-per-square-inch, or ("psi"). [Doc. 57, Ex. 1]. Pipeline L-2150 is a 16-inch gas

-1-

Case No. 1:07-cv-661
Gwin, J.

transmission pipeline that runs across Defendant's property. [*Id.*, Docs. 15, 19]. Its maximum allowable operating pressure is 550 psi. [Doc. 57, Ex. 1.] Pipeline SL-W8928 is a 3-inch gas storage pipeline that runs approximately 1,584 feet in length across the Defendant's property. [Docs. 15, 19] Its maximum allowable operating pressure is 1,200 psi. [Doc. 57, Ex. 1]

On April 14, 1948 the Muskingum Conservancy District, First Congregational Church's predecessor-in-interest, granted Columbia Gas's predecessor-in-interest, the Ohio Fuel Gas Company, easement right-of-ways for SL-W8814 and L-2150. This recorded agreement granted:

> the right to lay a 16 inch pipeline over and through the premises hereinafter described, and to maintain, operate, repair, replace and remove same, together with valves and other necessary appurtenances, on lands situated in Worthington Township, Richland County, and State of Ohio, and described as follows . . . With the right of ingress and egress to and from the same; the said Grantor to fully use and enjoy the said premises except for the purpose hereinbefore granted to the said Company. Said pipe is to be buried so as not to interfere with the cultivation of the land and said Company to pay any damages which may arise to crops and fences from laying, maintaining, and operating and final removing of said pipeline . . . And it is hereby further agreed that the said Company, its successors or assigns may at any time lay, maintain, operate, repair, replace and remove other lines of pipe at any points on said premises, upon the payment of a like consideration for each line, and subject to the same conditions as above; also may change the size of its pipe, by paying the damages, if any, to crops and fences which may arise in making such change.

[Doc. 57, Ex. 3, attached as Ex. 1].

On April 1, 1951, Muskinghum Watershed Conservancy District entered into an oil and gas lease with the Ohio Fuel Gas Company. This recorded lease covers SL-W8928 and states:

> the lessor . . . does hereby let and lease the land hereinafter described to the Lessee for the sole purpose of drilling and operating for oil and gas and all of the constituents of either, together with the exclusive right to enter upon said premises for the purpose of drilling for, producing and marketing oil and gas and all of their constituents, and to use and occupy the premises for all pipelines, water lines, pumps, tanks, structures and stations necessary or convenient in connection therewith for a term of 10 years and so much longer thereafter as oil, gas or their constituents are produced in paying quantities thereon, but only under the terms and conditions

-2-

Case No. 1:07-cv-661
Gwin, J.

> herein provided.
> . . .
> The Lessee shall bury, when so requested by Lessee, all pipelines to conduct gas or oil from the premises and shall pay all damages to growing crops and trees caused by operation of this lease.

[Doc. 57, Ex. 3, attached as Ex 2]. A Supplemental agreement to the lease gives the Lessee: "the additional right from time to time to inject gas of any kind for storage in and under said lands, . . . and to install and maintain on said lands such additional equipment and to do such other things as may be reasonably necessary and convenient for such purposes." [*Id.*]

The Ohio Fuel Gas Company installed SL-W8814 and SL-W8928 in 1951. It installed L-2150 in 1967. [Doc. 57, Ex. 3]. Columbia Gas became the successor-in-interest to the Ohio Fuel Gas Company and holds the rights granted the Ohio Fuel Gas Company due to a corporate merger in 1971. [Doc. 57, Ex. 3].

First Congregational Church acquired the appurtenant property in 1965. The Defendant church uses the property for worship gatherings, family activities, and allows other groups, including nature groups, an Indian tribe, and the Boy Scouts, to use the property as well. [Doc. 62, Ex. 2]. When the church purchased the property, a representative from Ohio Fuel Gas Company conferred with the church's principal clergyman about the gas pipelines and showed the clergyman the clearings at that time, which were between ten and fifteen feet. [Doc. 62, Ex. 1]. At that time, the gas company maintained its right-of-way between ten and fifteen feet. [*Id.*, Doc. 62, Ex. 3].

In 2003, the Plaintiff cleared the right of way to 20 to 25 feet. [Doc. 62, Ex. 3]. Although the conveying instruments nowhere define the right-of-way as being 50 feet, the Plaintiff began to claim a right to such a width in 2006. The Plaintiff contacted a member of the Defendant church, Brian Adair, and told him that Columbia Gas owned a 50-foot right of way, and asserted that the

Case No. 1:07-cv-661
Gwin, J.

Department of Homeland Security required this for gas pipelines. [Doc. 62, Ex. 3]. Even though Adair had no authority to authorize the clearing of the trees, the Plaintiff cleared all the trees within 50 feet of pipeline L-2150. [*Id.*]. First Congregational Church says the Plaintiff gas company did this without officially informing them. [Doc. 62, Ex. 1, 2]. First Congregational Church further alleges the Plaintiff deposited brush piles in excess of 55 feet from the centerline of L-2150, needlessly changing the topography of the area. [Doc. 15].

On March 7, 2007, the Plaintiff Columbia Gas filed a complaint seeking declaratory and injunctive relief that its easement entitled it to clear a fifty foot right-of-way on pipeline SL-8814. Plaintiff Columbia Gas also sued North Central Ohio Land Conservancy, Inc. and Mohican School in the Out-of-Doors about the easements for other pipelines. [Doc. 1]. This Court consolidated the cases and the Defendants filed a counterclaim seeking declaratory judgments and injunctive relief that Columbia Gas was not entitled to a 50-foot right-of-way in its easements for pipelines L-2150, SL-8928 and various other pipelines. [Docs. 11, 15]. With its counterclaim, Defendant First Congregational Church also sought damages from the previous tree clearing along the L-2150 pipeline. [Doc. 15].

Columbia Gas moved to dismiss the counter-claims as not ripe. [Docs. 18, 39]. On October 10, 2007, the Court denied this motion. [Doc. 50]. On October 17, 2007, the parties agreed to dismiss the claims that related to all pipelines except SL-8814, L-2150, SL-8928. [Docs. 55, 56]. The Plaintiff now moves for a declaratory judgment that its right-of-ways for SL-W8814, L-2150, and SL-W8928 are fifty feet in length and further moves for summary judgment on the Defendant's counterclaim, arguing the clearing was consistent with the fifty foot right-of-way. The Defendant opposes the motion.

Case No. 1:07-cv-661
Gwin, J.

## II. Legal Standard

*A. Summary Judgment Standard*

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d

Case No. 1:07-cv-661
Gwin, J.

561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

*B. Easement Standard*

The parties agree that Ohio law governs the construction of the easement. Granting of an easement includes a grant of all things necessary for the use and enjoyment of the easement. *Columbia Gas Transmission Corp. v. Adams*, 646 N.E.2d 923, 926 (Ohio C.P. Fairfield Cty. 1994) citing *Trattar v. Rausch*, 95 N.E.2d 685 (1950). "[W]hen the intended dimensions of an easement are not expressed in the grant itself, determining the dimensions becomes largely a question of fact." *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.,* 740 N.E.2d 328, 334 (Ohio Ct. App. 2000). "Under Ohio law, where the complete terms of the easement are not expressed in the instrument granting the easement, the extent and limitation of the easement are to be ascertained from the language of the grant, from the circumstances surrounding the transaction, and by what is reasonably necessary and convenient to serve the purpose for which the easement was granted." *Adams,* 646 N.E.2d at 926; *see also Roebuck v. Columbia Gas Transm. Corp.*, 386 N.E.2d 1363 (Ohio Ct. App. 1977). Further, "the dimensions may be established by use and acquiescence." *Crane Hollow,* 740 N.E.2d at 334.

-6-

Case No. 1:07-cv-661
Gwin, J.

The holder of an easement may not increase the burden upon the servient estate by engaging in a new or additional use of the easement. *Id.;* *Lakewood Homes, Inc. v. BP Oil, Inc.,* 90CA004754, 1999 WL 69315, 1999 Ohio App. LEXIS 3924 (Aug. 26, 1999). Without specific language to the contrary, however, "the easement holder 'is entitled to vary the mode of enjoyment and use of the easement by availing himself of modern inventions if by doing so he can more freely exercise the purpose for which the grant was made.'" *Id.* quoting *Ohio Oil Gathering Co. II v. Shrimplin,* No. 89-CA-20, 1990 WL 108737, 1990 Ohio App. LEXIS 3160 (July 23, 1990). The Court presumes that the parties contemplated that normal development would result in some changes in the mode of use of the easement, even if where it would have been unlikely that the parties anticipated the specific changes. *Crane Hollow,* 740 N.E.2d at 335 *citing* 28A Corpus Juris Secundum (1996) 371, Easements, Section 160.

### III. Discussion

The Plaintiff argues that it is entitled to a fifty-foot right-of-way as a matter of law, and if it is entitled to this right-of-way, its clearing of the trees along L-2150 was consistent with its use of the easement, and the Defendant is therefore not entitled to damages. The Court first considers whether the Plaintiff's easement is fifty-feet wide, and then will consider the counter-claim for damages.

*A. Whether the Plaintiff is Entitled to a Fifty Foot Easement*

Both parties agree that the contracts do not expressly define the width of the right-of-ways and that Ohio law governs their interpretation. Thus, this Court looks to (1) the language of the grant, (2) the circumstances surrounding the transaction, and (3) what is reasonably necessary and convenient to serve the easement's purpose. *Adams,* 646 N.E.2d at 926. The Court also looks to

Case No. 1:07-cv-661
Gwin, J.

the dominant estate owner's "use and acquiescence" in determining the dimensions. *Crane Hollow, 740 N.E.2d at 334*.

1. The Language of the Grants

*a. 1948 Agreement – covering L-2150 and SL-8814*

The 1948 Agreement grants the Plaintiff an easement for laying, maintaining, operating, repairing, replacing, and removing a 16 inch gas pipeline and other lines of pipe. The dominant estate holder, here the Plaintiff, agreed to bury the pipelines so as not to interfere with the land's cultivation and to pay any damages to crops or fences.

*b. 1951 Lease – covering SL-W8928*

The 1951 Lease provides for producing natural gas and oil, and allows the lessee to remain on the premises as long as the natural gas is produced "in paying quantities thereon."[1] It also allows the Lessee to "inject gas . . . for storage" into the Lessor's land. The 1951 Lease, however, also expressly contemplates growing crops and trees around the easement, and the Lessee assumes the damages to them under the operation of the Lease. This language could suggest the parties would expect crops or trees to be growing near enough to the pipelines or wells that they would need to be cut in the event of a need to bring equipment onto the land. It could also evidence an intent to pay for damages to trees or crops if the gas company decided to drill a new well in an untouched area. The contract is ambiguous in this regard. *U.S. Fid. & Guar. v. Aultman St. Elizabeth Med. Ctr., 716 N.E.2d 1201 (Ohio Ct. App. 1998)* (contracts ambiguous where susceptible to more than one reasonable interpretation).

---

[1] The Defendant does not make any argument about whether or not the Plaintiff continues to mine natural gas from its property. By the terms of the contract, if the Plaintiff does not still mine natural gas, the contract's plain language seems to terminate the easement within a few years.

-8-

Case No. 1:07-cv-661
Gwin, J.

2. The Circumstances Surrounding the Transaction

The parties put forth no evidence on this issue.

3. Reasonably Necessary And Convenient to Serve the Easements' Purpose

Under Ohio law, the dimensions of an easement usually become a question of fact when they are not expressed in the terms of the easement. *See Crane Hallow*, 740 N.E.2d at 334.

a. Regulations

The Plaintiff has a duty to maintain its storage pipelines in accordance with the Natural Gas Pipeline Safety Act, 49 U.S.C. § 60101, *et. seq.* and the Natural Gas Act, 15 U.S.C. § 717, *et. seq.* This duty includes the duties to monitor, inspect, repair, and provide gas service. The Plaintiff has developed a policy to help it comply with the Acts that do not allow any growths more than five feet tall within the right-of-way. [Doc. 57, Ex. 4]

The Plaintiff puts forth evidence that pursuant to OSHA regulations, the minimum trench for working on a pipeline would need to be nineteen feet. [Doc. 57, Ex. 6]. The Plaintiff also argues it would need various equipment, ranging between seven and ten feet in width. [*Id.*]. Even if this equipment could not go within a twenty foot clearing in front or in back of the trench, this evidences a need for a twenty-nine foot clearing, not a fifty foot one. The Plaintiff also argues that trees as far as ten feet away can grow roots that encroach upon a pipeline. Again, this does not evidence a need for a fifty foot clearing, rather one that is above twenty feet.

Even if the regulations demonstrated a need for a fifty foot clearing, Ohio courts also look to use and acquiescence and have refused to extend easements to fifty feet where the gas company has allowed mature trees growing within fifty feet of the pipeline. *See, e.g., Lakewood Homes v. BP Oil,* 5-98-29, 1999 WL 693152, 1999 Ohio App. LEXIS 3924 (Aug. 26, 1999); *Ashland Pipe Line*

Case No. 1:07-cv-661
Gwin, J.

*Co. v. Lett,* CA-942, 1990 WL 52505, 1990 Ohio App. LEXIS 1587 (Apr. 11, 1990). As such, the OSHA regulations only help the trier of fact to determine what is "reasonably necessary and convenient."

Further, even if the regulations suggest a fifty-foot wide clearing were necessary, the Court considers them in light of what the parties contemplated at the time of the granting of the easement. *See Lakewood Homes v. BP Oil,* 5-98-29, 1999 WL 693152, 1999 Ohio App. LEXIS 3924 (Aug. 26, 1999); *see also Voisard v. Marathon Pipeline*, 9-05-49, 2006 WL 3803868, 2006 Ohio App. LEXIS 6829, at *10 (Dec. 28, 2006) (Rogers, J., dissenting) ("I do not believe that, at the time these parties entered into the agreement, either contemplated federal regulation of gas companies to the extent that they are regulated today. Nor do I believe the parties contemplated the use of aerial surveillance to achieve the regulatory mandates. On that issue, I would follow this court's holding in *Lakewood Homes, Inc. v. BP Oil, Inc.*." ) Therefore, this evidence does not demonstrate the Plaintiff entitled to a judgment as a matter of law that fifty feet is necessary.

The Plaintiff argues that fifty feet is necessary for it to conduct aerial patrol. The Court presume that the parties contemplated normal developmental changes in the use of the easement. *See Crane*, 740 N.E.2d at 336. This does not, however, demonstrate that the parties in this case agreed to a fifty foot right-of-way. In *Crane,* the court found that the parties had contemplated a large right-of-way in the magnitude of fifty feet, as evidenced by past use. In *Lakewood Homes v. BP Oil, Inc.*, the court found that clear-cutting the trees to fifty feet imposed an increased burden on the servient estate for which the servient estate holder should be compensated. 1999 WL 693152, 1999 Ohio App. LEXIS 3924 (Aug. 26, 1999). The court also noted the absence of any evidence put forth by the pipeline company "its maintenance and inspection could not be carried out in a manner which

-10-

Case No. 1:07-cv-661
Gwin, J.

did not impose additional burdens on [the] servient property." *Id.* at *11. The question in this case is the width of the right-of-way.

While the Plaintiff is entitled to carry out maintenance and inspection, its ability to do so in a way that does not impose additional burdens on the Defendant's property is relevant to both "what is reasonably necessary and convenient" and to the Defendant's counterclaim for damages.

b. Expert Reports

The Plaintiff puts forth two experts who opine that fifty feet is the minimum amount of space reasonably necessary and convenient for it to safely operate its pipelines. [Doc. 57, Ex. 5, 6]. The Defendant's expert Marcha argues that fifty feet is not necessary. [Doc. 62, Ex. 6].

The Defendant's expert also stated that for a 16-inch pipe, such as L-2150, it may not be practical to maintain a twenty-to-twenty five foot right-of-way, and that fifty feet may be reasonably necessary and convenient. [Doc. 57, Ex. 6: Marcha Dep., 106-08] He also stated that a thirty five foot clearing was adequate for inspections that involve walking the terrain, as the Plaintiff has inspected these lines in the past. [*Id.* at 78] While the Defendant's expert wavered on what would be "reasonably necessary and convenient" for a 16-inch pipeline, this alone does not give the Plaintiffs the right to a summary judgment.

The expert's discussion of the relevant safety issues is only one issue among many that the Court considers in determining the dimensions and scope of the easement. *Adams,* 646 N.E.2d at 926; *Crane Hallow,* 740 N.E.2d at 334. As discussed above, the Court also considers the language of the grants and the circumstances surrounding the transactions–neither of which would entitle the Plaintiff's to a judgment as a matter of law. Furthermore, and as discussed in the next section, the Defendant has raised an estoppel argument with factual issues that must be determined at trial.

Case No. 1:07-cv-661
Gwin, J.

Defendant's expert was steadfast in his opinion that a fifty foot clearing was unnecessary for a three-inch gas storage pipe, such as either SL-W8814 or SL-W8928. As such, this raises a further genuine issue of material fact such that summary judgment is inappropriate for both of these pipelines.

c. Other Cases

The Plaintiff cites many cases finding that fifty feet is "reasonably necessary and convenient" for a gas pipeline easement. As an initial matter, the Court notes only one of these cases found this on summary judgment. *Voisard v. Marathon Ashland PipeLine, LLC*, 9-05-49, 2006 WL 3803868, 2006 Ohio App. LEXIS 6829 (Dec. 28, 2006). That case had language in the contract granting the gas company the right to take action it believed was necessary. *Id.* This case does not.

As discussed above, when the language of the grant is ambiguous, the dimensions is a question of fact. *Crane Hallow*, 740 N.E.2d at 334. Thus, other cases are of limited value. The Plaintiff cites two cases involving the clearing of trees: *Crane Hallow*, 740 N.E.2d 328; *Andrews v. Columbia Gas Transmission Corp.*, 2:05-cv-501, 2007 WL 1057388, 2007 U.S. Dist. LEXIS 25797 (S.D. Ohio April 6, 2007) (noting there were only two trees at the time of the easement's grant and finding an interim policy allowing the growing of trees did not destroy the easement). Both of these cases, like here, had conflicting evidence, and both proceeded to trial.[2]

---

[2] The Court also finds the cases involving newly constructed buildings wholly distinguishable. *See, e.g., Columbia Gas Transmission Corp. v. Davis*, 33 F. Supp. 2d 640 (S.D. Ohio 1998) (holding Davis must move a newly constructed garage); *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F. Supp. 180 (S.D. Ohio 1992) (holding Swango must move a temporary storage shed located on top of the pipeline). First, buildings are much harder to move quickly than trees. Second, to help determine the dimensions of the easement, the Court considers use and acquiescence. The Defendant has put forth undisputed evidence that the Plaintiff had acquiesced to a clearing of between ten and fifteen feet until 2003, when it insisted on twenty to twenty five feet, and it now, in 2007, insists on fifty feet. This case is quite different, therefore, than cases involving newly constructed buildings where there was no use and acquiescence evidence.

Case No. 1:07-cv-661
Gwin, J.

4. Use and Acquiescence

Finally, the Court considers evidence of use and acquiescence in determining the dimensions of the easement. In this case, the Defendant has put forth evidence that the Plaintiff should be estopped from arguing a larger easement than twenty-five feet is reasonably necessary and convenient. A mere prior failure to remove some trees may not be adequate to estop a party from arguing for a wider easement. *Crane Hallow*, 740 N.E.2d 328. In this case, however, the Defendant argues more than a prior failure to remove trees. It cites evidence that the Plaintiff's predecessor-in-interest showed the Defendant's clergyman the clearings of the trees so that the Defendant would know what to expect–and showed him clearings of ten feet, occasionally increasing to fifteen feet in width. [Doc. 62, Ex. 1]. Further, in 2003, the Plaintiff told a member of the Defendant's church it needed twenty-five feet, not fifty. [Doc. 62, Ex. 2]. These conversations and interactions, coupled with the Plaintiff's failure to remove mature trees until now, may demonstrate enough evidence of use and acquiescence to estop the Plaintiff from arguing for fifty feet under Ohio law.

The court in *Crane Hallow* rejected the argument, made here, that the gas company should be estopped from asserting a wider right-of-way than previously cleared. In that case, however, the gas company had failed to clear some younger trees but its predecessors had maintained a seventy-five foot wide clearing in other areas. 740 N.E.2d at 337. The gas company also demonstrated that the gas company had used some older trees within the fifty foot right-of-way to bend pipes and therefore their growth was not inconsistent with its use of the easement. *Id.* at 335. Further, it had bulldozed brush and everything else within the fifty feet but had not cut down the trees because that would have damaged the pipeline. *Id.* at 335-36. The court in *Crane Hallow* therefore found the

-13-

Case No. 1:07-cv-661
Gwin, J.

trees within fifty feet of the pipeline had been part of the gas company's use of the easement. The use and acquiescence evidence in *Crane Hallow*, therefore, is quite different than that here.

The Plaintiff also cites *Andrews v. Columbia Gas*, where the court allowed Columbia Gas to argue for a fifty-foot easement. In that case, unlike here, the court did not have any affirmative evidence other than a failure to remove trees. No. 2:05-cv-501, 2007 WL 1057388 (S.D. Ohio April 6, 2007).

For these reasons, the Defendant raises a reasonable "use and acquiescence" estoppel argument that raises additional fact issues that the Court cannot determine as a matter of law. Where, as here, the easement's language is silent on its dimensions, there is no evidence of the contracting parties' original intent, there is conflicting and insufficient evidence to demonstrate as a matter of law what is "reasonably necessary and convenient," and there is evidence that the Plaintiffs prior "use and acquiescence" of the easement conflicts with their current argument, summary judgment is inappropriate. Therefore, the Court denies the Plaintiff's motion for judgment that they are entitled to a fifty-foot easement on all three pipelines.

*B. The Plaintiff's Clearing of the Trees*

The Court has found that the Plaintiff has not demonstrated that they are entitled to a fifty-foot easement as a matter of law. Therefore, summary judgment for the Plaintiff on their clearing of the trees within fifty feet of L-2150 is inappropriate.

**IV. Conclusion**

For the reasons discussed above, the Court **DENIES** the Plaintiff's motion for summary

Case No. 1:07-cv-661
Gwin, J.

judgment.

       IT IS SO ORDERED.


Dated: December 11, 2007                             s/       *James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE

Case: 1:07-cv-00661-JG  Doc #: 74  Filed:  12/11/07  15 of 15.  PageID #: 612